All right. Is it Mr. Sheffer? It is, Your Honor. Yes. Mark Sheffer, appearing on behalf of Appellant Chris Comis. I'd like to reserve five minutes for my rebuttal argument. Five minutes it is. Go ahead, sir. Thank you, Your Honor. The Appellant argument is pretty straightforward. And fairly, it's that Judge Rice, the trial judge, did not apply the law, the existing law in this circuit, as to a retaliatory hostile environment claim. The case law, the primary case, which was the presidential published decision of Moore v. City of Philadelphia, required that in light of going to Northern, the standard for a retaliatory hostile environment claim changed, not requiring severe or pervasive conduct any longer, but simply requiring protected conduct by the employee, materially adverse conduct, which is conduct which may have dissuaded a reasonable person from making or supporting a charge of discrimination and causation. So here's what I don't understand about the argument, and you can help me. So you frame it as retaliatory hostile environment. So let's say we're starting from the beginning now, right? It's a perfect world, and you're the leader of the world. So I know it's a fantasy. It is, unfortunately. So we have retaliation, and in order to understand your retaliation claim, right, we have to define hostile environment. Now, is your point that when you have a primary retaliation claim, Burlington Northern no longer requires that you give a fulsome instruction on hostile environment, laying out all of the elements of hostile environment, so that, in fact, the jury doesn't have to decide, number one, was there a hostile environment, and then, number two, how does it fit in to the retaliation? Yes, Your Honor, and I believe that's consistent with, for example, Moore, which Judge Rice rejected Moore as precedent for binding precedent to him on the basis of it not being a retaliatory hostile environment case. I submit that he's wrong on that. I mean, if you look at the Moore opinion, specifically it says that on page 349, plaintiffs sought to recover from harassment in the case. The trial judge detailed, in her opinion, a very broad array of a pattern of harassing conduct that was at issue. Certainly, if you want to argue that Moore didn't only have a retaliatory hostile environment aspect, perhaps, but it clearly did. And the Moore court jettisoned the requirement of severe pervasive. It did not raise a separate analysis for hostile environment, but it subsumed it within the retaliation standards. So a retaliatory hostile environment claim, you don't need to, based on your position, you don't need to instruct the jury at all on hostile environment, or you just need to remove severe or pervasive. I'm not understanding. You don't, I mean, the characterization serves to educate the jury in terms of expressing the conduct at issue. It's an environment, it's harassing. It's not an element of proof to show a hostility. But Moore is not a federal employee case, right? It was not, correct. And are you saying we should treat federal employee cases the way we treat other employee cases? Absolutely. In spite of this different statute? Yes, Your Honor, and that's why I reserved five minutes for rebuttal, because that's primarily the- Well, that's primarily what I'm interested in, so why don't you talk about that? No, no, no, I understand that. No, the case that the Secretary relies upon Gomez-Perez to make the distinction, simply all that Gomez-Perez did was say that, made clear, which the majority of almost all the circuits recognize a federal employee prior to Gomez-Perez and Burlington Northern to have a retaliation claim. All Gomez-Perez did was make that clear that, yes, the Supreme Court said that's right, because there was a split, a couple, maybe one or two circuits didn't recognize that, said, yes, the regular provision, the anti-discrimination provision of Title VII for federal employees does, for age discrimination in that case, does include retaliation. That's all it said. It didn't, and specifically, the court did address the distinction, because there was dissent in Gomez-Perez, and it noted that the distinction made in terms of there being a separate provision in Title VII was related to the, let me just find the language, was related to the concern of Congress that it may have wanted to explicitly extend Title VII's more limited anti-discrimination provision, and that's an important point, too. But Congress specifically drafted an anti-retaliation provision in Title VII because it wanted to reach outside the scope of employment, and the Gomez-Perez court says that in the majority, says it on page 481, footnote 1. It addresses the, what it calls the conceptual distinction between status and conduct and why there's a separate provision and speculated as to why Congress had that separate provision in there, to reach outside the employment context. But how can we then say that that applies to the separate statutory provision for federal employees? Because Gomez-Perez tells us retaliation is included within the anti-discrimination provision. That applies to private employees or state employees. No. Gomez-Perez addressed the federal employee in ADEA claim with similar language in terms of the anti-discrimination provision addressing personal actions, saying any personal action by a federal employer based on age violates the statute. So I don't think Gomez-Perez changes the landscape. And let me make a point in that regard. The statute, the specific statute that addresses anti-discrimination in federal employment says personnel actions, that any personnel action which is motivated by age discrimination runs afoul of the statute. That is different in itself and broader than the private sector discrimination provision, which is limited to action affecting the terms and conditions of employment. It's not personnel action. It's a different language. So assuming you're right about that, why does the sufficiently severe and pervasive standard, why isn't that encompassed in what you've just said? The purpose, Your Honor, of the severe and pervasive requirement, and it goes back to the Supreme Court's sexual harassment precedent, is in light of the private sector provision requiring conduct altering the terms and conditions of employment. Since you don't have a specific action doing that, a firing or suspension or demotion, the way a harassment case reaches conduct altering the terms and conditions was by making it severe and pervasive. So the severe and pervasive requirement was to come within the statutory requirement of altering the terms and conditions of employment on a straight, like sexual harassment, hostile environment claim without retaliation. It could also apply to conduct that's not related to an employment decision, too, could it not? The Supreme Court does say yes now that after subsequent to Burlington Northern, which I believe Burlington Northern, although the conduct in that case was employment-related, Burlington Northern did indicate that it does extend outside the scope, and that was made explicit by subsequent Supreme Court case. But Burlington Northern and Moore didn't deal with Meritor, did they? Why should we believe that? They were retaliation cases. Why should we believe that? They did away with the severe and pervasive requirement. Well, because Moore discussed his court's decision in Jensen, and did look at the hostile environment, and I think looked at the Supreme Court precedent establishing that, and at least to some extent Burlington Northern displaced or at least altered the holding in Jensen. I don't know how much they did. By taking out the severe and pervasive conduct aspect for retaliation. Yeah, and making it materially adverse rather than adverse action, which again, the whole purpose of the adverse action, I mean the severe and pervasive, was to show adverse action. If retaliation doesn't require adverse actions in terms of action affecting the terms and conditions of employment, it's not necessary. That's the only error as you see it? That instead of severe or pervasive, it should have been materially adverse? It should have been the standard indicated in Moore, which is simply protected conduct, materially adverse, which is materially adverse, and then a causation connection between the conduct and the materially adverse action. And I didn't mention it to you because it's not binding, but the Hare v. Potter case within the circuit was explicitly a federal employee with a retaliatory hostile environment case, and a panel of this court applied the Burlington Northern materially adverse standard and rejected the severe and pervasive. They're not bound by that? They're not, Your Honor. But I'm arguing that it's a good decision, and it's certainly another panel decision, but it's not binding. And it is explicitly the Daniels v. School District of Philadelphia Court, which is a recent opinion of this year, 776F3D181, explicitly adopted the adverse action materially adverse component for a retaliation case, without question.  Okay, thank you, Your Honor. Thank you, Your Honor. Mr. Metzinger? Yes. Good afternoon. May it please the court, my name is Richard Metzinger. I'm an assistant United States attorney, and I represent the Secretary of Labor in this case. After a five-day trial, a jury found in favor of the Secretary of Labor and found that there had been no retaliatory hostile work environment here. The appellant raises one issue on appeal. The Judge Rice's jury instruction was wrong in including severe and pervasive. He's wrong. The federal sector provision, 2000E-16, provides that all personnel actions shall be made free from discrimination. It's different than the private sector provisions in Title VII. 2000E-2 prohibits discrimination. 2000E-3 prohibits retaliation. There's no explicit retaliation provision in the federal provision, 2000E-16. Have you preserved this issue? Pardon me? Did you preserve this issue? Well, the issue is yes. Yeah. Courts have found retaliation in Title VII, and Gomez-Perez, the Supreme Court case involving the age discrimination case, is very instructive here because the age discrimination case was based on Title VII and contains a separate provision for the federal government and different provisions for private sector employees. In Gomez-Perez, the Supreme Court found that although there was no specific retaliation provision in the Age Discrimination Act, that the prohibition against discrimination encompassed a prohibition against retaliation. The federal sector, like the age discrimination, you must have a personnel action because that's what the statute prohibits. It prohibits personnel actions must be free from discrimination. Gomez makes a claim of hostile work environment here. A hostile work environment is akin to a personnel action only when it rises to the level of severe or pervasive. That's if we go back in the history of hostile work environment. The Meritor case specifically found that in connection with private sector claims that if you had a severe or pervasive environment, in that case in sexual discrimination, sexual harassment, that that could create an abusive and hostile workplace and that that was akin to something that altered the terms and conditions of employment. Similarly here, a hostile work environment that is severe and pervasive would be akin to the personnel action that the statute prohibits. Prohibits for discrimination purposes. Appellant talks about Burlington-Irwin. It's important to remember a few things about Burlington-Northern. Burlington-Northern did not involve the federal government. Burlington-Northern was not a hostile work environment case. Burlington-Northern did not discuss severe or pervasive. I'm not sure what arguments Appellant is exactly making as to why the private sector provision, why retaliation encompasses something more than severe and pervasive in the federal sector, but some courts have made an attempt to. Appellant references the Caldwell case, which is an unpublished pro curiam Fourth Circuit case and the Twisdale case. There's basically two kinds of arguments they make there. One argument is that section 2000E-D incorporates certain remedial provisions in Title VII, 2000E-5F through K, and that there's a reference in one of those provisions to 2000E-3, the retaliation provision. And the argument goes, I guess, that therefore the retaliation provision is incorporated into the federal sector provision. That's wrong for a lot of different reasons. First of all, 2000E-16D states that certain private sector remedy provisions will govern civil actions, and it's talking about things that were incorporated like jurisdiction and venue and equitable relief and appeals and attorneys fees. It was not changing the substance of the possible claims that could be brought against the federal government. Number two, section 2000E-16D incorporates those provisions only as applicable. They would not be applicable because the statute itself provides the scope of its coverage. Moreover, if you look at 2000E-5G2A, it simply provides that equitable relief is not available in circumstances and references the retaliation provision. It's certainly not, if you read it, incorporating any kind of retaliation provision into the federal sector provision. Moreover, if Congress had wanted to incorporate the private sector provisions into the federal sector provisions, it would have done so explicitly. In 1972, when Title VII was amended, it added state and local governments to the definition of employer. It added to Title VII, but in the definition of employer, it specifically excluded the federal government. If Congress wanted to apply the same provisions in 2000E-2 and 2000E-3 to the federal government, it could have done so simply by modifying the definition employer where it could have explicitly referenced those provisions. It did not do so. Finally, in Gomez-Perez, the Supreme Court specifically stated, and this is a quote, and like the ADA's federal sector provision, Title VII's federal sector provision incorporates certain private sector provisions, but it does not incorporate the provision prohibiting retaliation in the private sector. This notion that somehow this reference and it somehow incorporates the private sector provision just makes no sense. You have to twist like a pretzel to try and incorporate this, and obviously simple explanations are much better. The other thing that argument has been made in some of the cases is it's somehow illogical to have a different remedy for private sector employees or state and local governments and federal sector employees. There's nothing illogical about interpreting the plain terms of the statute that prohibit personnel actions. That's what we're doing here. We're interpreting a statute. We're not legislating as to what might be an appropriate scheme. Congress already did that. More importantly, the context for federal employees is different. Justice Roberts in the Gomez-Perez, in his dissenting opinion, admittedly in Gomez-Perez alluded to that. The federal workers have a host of remedies, and they had a host of remedies even back in 1972 when Title VII was amended. The Civil Service Reform Commission, later amended by the Civil Service Reform Act, executive orders prohibiting certain kinds of discrimination, grievance procedures, union remedies. There was an administrative scheme that was already in place, and Congress could and certainly did have good reasons for establishing a separate provision for federal sector employees. The bottom line here is there's simply no basis for concluding that throwing out, essentially, the restriction in 2008-16 to personnel actions. So Meritor is still good law. Meritor is still good law, of course, and it's still good law for the private sector. And Jensen, at least to the extent it wasn't overruled by Burlington Northern. Well, Jensen actually does not mention 2008-16 if you actually look at the decision. And in Jensen, which was admittedly prior to Burlington Northern, it discusses the severe and pervasive standard. And, in fact, Jensen specifically says the severe and pervasive standard is very important in retaliation cases. And one reason for that is because unlike some other sexual harassment cases, for example, it's not always so clear what the harassment is for, whereas there may very well be good reasons for actions that an employer took. Well, what's the... Oh, I'm sorry. Oh, no. I was going to ask what is the statement of law, the standard that we should set down should we decide to write presidentially on this, but that may be at the end of it. I was going to ask you how Burlington Northern would affect your statement about Jensen. So Burlington Northern is a private sector case. And the critical thing about Burlington Northern is what it looked at was the difference between 2000E-2, the discrimination provision for private sector employers, and 2000E-3, the retaliation provision. And it said because the language was different, we're going to interpret them differently. That's not true in the federal sector provision. There's only one piece of language, and it says, all personnel actions shall be made free from discrimination based on race, color, et cetera. And so the way that the statute should be interpreted is this, at least as far as retaliation is concerned. What you need is one of two things. You either need to... So if we're going through the McDonnell Douglas kind of shifting burdens, protected conduct, and then what do you need for the second element? What you need is either a personnel action, however that may be defined, or secondly, you could show it as in this case, if you're alleging a hostile work environment claim, you could allege it by establishing that claim, namely that action was severe or pervasive. In such a case, it would rise to the level of a personnel action. It would be akin to a personnel action. It would be something that would affect the working conditions. And that would be something that would be actionable. And so in this case, the important point is, if you're going to try and prove some kind of claim against the government, you either have to show that personnel action or you have to show a hostile work environment. If Congress doesn't like it, they can revise the statute. If Congress doesn't like it, they can revise the statute. I'm sorry. I'm sorry. I didn't want to cut you off in your answer. We're interpreting a statute here, and that's what we're trying to do. And there have been cases out there that have said different things, and what you'll find, the Hare case is a perfect example that was cited. Yes, that's a case involving the federal government, but if you actually look at it, you'll see what the court relied on in that case was 2000E-3, the retaliation provision for private sector employees. It didn't even mention the federal sector provision, 2000E-16, anywhere in the opinion. And then it was a case that essentially remanded it. So what we have in many of these cases is we have bits and pieces taken from different cases without any unifying theory, without looking at the particular statute affecting federal employees and trying to twist and reach some kind of result that's just wrong. So Judge Rice in this case charged on both the severe and pervasive and also on the materially adverse. So if we were writing a standard, you're saying we should ignore the materially adverse language? I think that's right, Your Honor. The materially adverse is no part of the standard vis-a-vis the federal government. It's just not part of it. In this case, it makes no difference. Does it undermine the severe and pervasive aspect of it? No, I don't think it does. I think what Appellant is suggesting here is presumably there's a spectrum. Either you would have something that wasn't materially adverse. Presumably that's a lesser standard, although that's not entirely clear. That's what the court in here suggested. You would have some action that would be between materially adverse and severe or pervasive. Presumably that's what the Appellant is saying here. She would fall into that category. And then, of course, there's anything above severe and pervasive. Anything that meets that standard would certainly be actionable against the federal government through the hostile work environment claim. Are there any Appellant cases that have rejected materially adverse for the federal sector? There's no case that I know of where this has been brought up and argued. I believe it ended up being decided on other grounds, which I would just happily answer any other questions. No, no, no. I think our research revealed a similar conclusion. I mean, I think if you look at those cases, what you'll see is there's not much real analysis. It's building like a house of cards. This case found retaliatory hostile work environment against the government. Hey, there's a case that found it without any kind of analysis. And that's what we need here, and especially in the hostile work environment where you take something that mainly arose in the sexual harassment area and you try to bring it into the retaliation, as your Honor suggested, you can have some problems from that. Let me just say one thing because this is the issue that the Appellant raised, but the other important issue here is harmless error. We had a trial here.  The focus of the trial was whether there was pretext retaliation or not. The case was never about severe or pervasive. Severe, if you look at the kinds of issues that the Appellant argued constituted his hostile work environment, there were things like discipline, failure to promote, refusal to transfer, being placed in a new position, removed assignments, denied comp time and training. Well, if it was true that there was retaliation because of those things, there's no doubt that was severe. And Plaintiff Appellant alleged more than 60 claims, 60 EEO claims of retaliation between 2003 and 2008. If what she alleges the Department of Labor OSHA did were true,  but the case wasn't about that. The focus of the case was on was there pretext, was there retaliation? To some extent, was there a causal connection? Indeed, the first element of the jury charge is whether the Plaintiff was subjected to retaliation. The third element was whether it was motivated, whether the agency was motivated by the fact that she complained about discrimination and retaliation. That's what this case was about. Remember, the standard on review is whether it's highly probable that the result would be the same. We spent 40 pages trying to go through the evidence. If you look at my closing argument, you'll see even more detail. In detail, showing how in each case there was no evidence of pretext retaliation. In some cases, there was no evidence of causal connection. All right, you don't get to do your summation again. Okay. And there was no red light with your summation. If I could just... No, this is that time. Back away, feel good, and have a seat. Thank you. Thank you. Again, the government wants, the agency wants to have its cake, and it's to you too. It says, well, since there is no anti-retaliation provision for the federal sector, you have to look at the substandard provision. Well, the anti-discrimination provision is broader than the private sector provision. It says all personnel actions. It doesn't say altering the terms and conditions, which is a higher standard. Gomez Perez explicitly, again, at page 480, I think it was 47, 488, addressed that, saying that it's broader. The age discrimination has the same language, all personnel language. It's broader than the private sector provision. Why don't you address the issue that Judge Sirica brought up with regard to what's the vitality of meritor, as it relates to that case and then subsequent cases, when you're talking about the hostile work environment in this type of E16? I don't think meritor is applicable. Again, the language, and I believe I quoted meritor in my brief, the language in meritor talks about the requirement of severe and pervasive as being necessary to show an altering of the terms or conditions of employment. Again, that's not, if we're going to look at the statutory language, that's not the federal provision. It doesn't say altering of terms and conditions.  The Supreme Court has told us it's broader. Caldwell Johnson said it's broader. Ms. Comis is referring to personnel actions. I mean, she's not, again, I made the point in my original argument is that, again, Colgomez-Perez talked about Congress passing the internal retaliation provision in the private sector, and its concern might have been reaching beyond the employment context. Well, Ms. Comis is not doing that. I mean, all the actions at issue are personnel actions, and primarily changes in her work duties, giving her clerical, I mean, we're addressing personnel actions in the case. So if you want to look at the language, again, the hostile environment, severe and pervasive requirement was established to meet this heightened standard in the private sector of altering the terms and conditions of employment. What evidence was there that you posed rebutting the legitimate non-discriminatory basis for the action? Well, I addressed on pages 21 and 22 of my brief, Your Honor, the significant change in Dr. Comis' job duties, loading up clerical work in 2006, taking them away from a clerk, and there's abundant evidence to the record of that, right at the time that she has engaged in very heightened EEO activity, including a dispute with her supervisor, Ms. Russo, about taking time to respond to an EEO interrogatory on one of her claims. I thought the evidence was that there was a position change, and there were two people up for it, and they wanted to make sure that they saved her a grade. Was that part of the? That was a claim initially, and it was a failure to promote claim. Judge Rice rejected that, so it didn't go to the jury. It was not a focus of the case. And on the sense of the harmless error argument, I do want to stress again that, as I did in my brief, Judge Rice, the trial judge who, in the harmless error case law, talks about the significance of not eroding the jury's function of proper deference to the trial judge in the appropriate cases, and I think this is the case. Judge Rice, who applied a higher standard to the evidence before him, said there was enough to go to the jury. Obviously, we need the court to agree with us that it's not that higher standard, and if it's not, this case should not be affirmed on a harmless error analysis when the trial judge, applying a higher burden of proof, said there's enough for the jury to fight for Dr. Comus. Thanks. Okay, thank you. Thank you. We're going to take a five-minute break before we hear our...